

United States District Court
Eastern District of Michigan
Southern Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 17-cr-20406 |
| | Honorable Paul D. Borman |
| v. | |
| | Offenses: **Misprision of a Felony** (18 U.S.C. § 4) |
| D-7 MICHAEL BROWN, | |
| Defendant. | Maximum Imprisonment: 3 years |
| | Maximum Fine: $250,000 |
| | Maximum Supervised Release: 1 year |

## Rule 11 Plea Agreement

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Defendant **Michael Brown** and the government agree as follows:

**I.    Guilty Plea**

    **A.    Count of Conviction**

ORIGINAL

Defendant **Michael Brown** will enter a plea of guilty to Count One of the Fifth Superseding Information, which charges misprision of a felony, in violation of 18 U.S.C. § 4.

### Elements of the Offense

The elements of misprision of a felony, as charged in Count One of the Fifth Superseding Information, are as follows:

(1) A federal felony was committed;

(2) The defendant had knowledge of the commission of that felony;

(3) The defendant failed to notify the relevant authorities as soon as possible; and

(4) The defendant deliberately took an affirmative act to conceal the crime.

**B.   Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for Defendant **Michael Brown's** guilty plea:

From 2009 through 2016, **Michael Brown** was employed as a Director for Employee Relations at Fiat Chrysler Automobiles US LLC (FCA). During that time **Michael Brown** was personally involved in the negotiation and administration of the national collective bargaining agreements between FCA and the International United Automobile, Aerospace, and Agricultural Implement Workers of America

(UAW) and had authority to sign letters and agreements on behalf of FCA with the UAW. **Michael Brown** also represented FCA as a Co-Director of the UAW-Chrysler National Training Center (NTC).

From in or before 2009 through 2015, FCA executives conspired with one another, with FCA, with officials at the UAW, and with the UAW, to violate the Labor Management Relations Act. **Michael Brown** knew that FCA executives including (D-2) FCA Vice President Alphons Iacobelli, (D-1) FCA Financial Analyst Jerome Durden, FCA Senior Manager FCA-11, FCA Senior Manager FCA-10, FCA Executive FCA-6, and others acting in the interest of FCA used the credit card accounts and the bank accounts of the NTC to conceal over $1.5 million in prohibited payments and things of value paid to officers and employees of the UAW, knowing that the officers and employees of the UAW were not permitted to receive those payments and things of value. **Michael Brown** knew that FCA executives authorized prohibited payments and things of value to UAW Vice President General Holiefield, (D-4) UAW Official Virdell King, (D-5) UAW Official UAW-2, UAW Official UAW-3, and UAW Official UAW-4, each of whom served on the UAW's National Negotiating Committee.

Prohibited payments to UAW Vice President General Holiefield included over $435,000 paid in 2011 and 2012 to a vendor that Holiefield controlled with his girlfriend and later wife (D-3) Monica Morgan; over $30,000 in airline tickets for

Holiefield's girlfriend and later wife (D-3) Monica Morgan to travel to such locations as Miami, Florida, Las Vegas, Nevada and Los Angeles, California between May 2011 and October 2013; $200,000 worth of purchases on Holiefield's NTC credit card in 2012 and 2013, including jewelry, furniture, designer clothing and other personal items and expenses; and the payment of Holiefield's $262,219.71 mortgage in June 2014. These expenses were paid for by the NTC using funds provided by FCA.

Prohibited payments to UAW Official UAW-3 included over $30,000 in expenditures for a party in August of 2014, which included charges for "ultra premium" liquor, more than $7,000 worth of cigars, and more than $3,000 worth of wine with custom labels in honor of UAW-3. These expenses were paid for by the NTC using funds provided by FCA.

The prohibited payments also included private accommodations, golf resort fees and lavish meals in Palm Springs, California provided to UAW-3 and UAW-4 in January and February of 2015. These expenses were paid for by the NTC using funds provided by FCA.

**Michael Brown** knew that the purpose of the conspiracy to provide prohibited payments to UAW officials was to grease the skids in order to obtain benefits, advantages, and concessions in the negotiation, implementation, and administration of the collective bargaining agreements between FCA and the UAW.

**Michael Brown** knew that the prohibited payments to UAW officials and to the UAW by FCA executives acting in the interest of FCA were against the law.

Between 2009 and 2015, **Michael Brown** knew that FCA executives and UAW officials had committed the felony offense of conspiracy to violate the Labor Management Relations Act. **Michael Brown** failed to notify the U.S. Department of Labor – Office of Inspector General, the Federal Bureau of Investigation, the Grand Jury of the United States District Court for the Eastern District of Michigan or any other relevant authorities with respect to the criminal activities that were known to him.

On December 16, 2015, while he was employed by FCA as a Director for Employee Relations, **Michael Brown** appeared before a federal grand jury convened by the United States District Court for the Eastern District of Michigan. At that time, **Michael Brown** provided misleading and incomplete testimony in a deliberate effort to conceal the conspiracy to violate the Labor Management Relations Act by FCA, FCA executives acting in the interest of FCA, the UAW and UAW officials.

C. **Additional Offense Information**

**Michael Brown** provided the following information to the United States pursuant to a proffer agreement with the United States, and the parties agree that it should not be included in determining defendant's guideline calculations under

- 5 -

U.S.S.G. § 1B1.8(a). **Michael Brown** knew of additional prohibited payments and things of value authorized by FCA executives and paid to UAW officials and the UAW in furtherance of the conspiracy to violate the Labor Management Relations Act.

From 2009 through 2015, FCA executives authorized UAW Vice President General Holiefield, UAW Official UAW-3, and other UAW officials to offer sham employment status at the NTC to a number of their friends, family, and allies. At the direction of UAW Vice President General Holiefield, UAW Official UAW-3, and other UAW officials, numerous individuals were categorized as being on "special assignment" status to the NTC when, in fact, those individuals did little work or no work on behalf of the NTC.

While he served as Co-Director of the NTC, **Michael Brown** and other FCA executives authorized hundreds of thousands of dollars in payments to the UAW, in the guise of reimbursements for 100% of the salaries and benefits the UAW paid to individuals placed on "special assignment" status to the NTC, knowing that a number of those individuals did little work or no work on behalf of the NTC. **Michael Brown** and other FCA executives authorized these sham reimbursement payments as a political gift to UAW Vice President General Holiefield, UAW Official UAW-3, other UAW officials, and the UAW.

While serving as Co-Director of the NTC, **Michael Brown** and other FCA executives authorized hundreds of thousands of dollars in payments to the UAW, in the guise of reimbursements for 100% of the salaries and benefits the UAW paid to members of the UAW International Staff, knowing that a number of those individuals did little work or no work on behalf of the NTC. **Michael Brown** and other FCA executives authorized these sham reimbursement payments as a political gift to UAW Vice President General Holiefield, UAW Official UAW-3, other UAW officials, and the UAW.

While he served as Co-Director of the NTC, **Michael Brown** and other FCA executives authorized additional prohibited payments to the UAW in the form of a 7% administrative fee that was added to the monthly demand by the UAW for reimbursement of salaries and benefits. The UAW did not, in fact, incur legitimate cost or provide legitimate services to the NTC to justify the addition of a 7% administrative fee. **Michael Brown** and other FCA executives authorized the payment of the inflated administrative fees as another gift to UAW Vice President General Holiefield, UAW Official UAW-3, other UAW officials, and the UAW.

**Michael Brown** and other FCA executives knew that the UAW and its officers and employees were not permitted to receive the sham reimbursement payments and the inflated 7% administrative fee payments and used the bank accounts of the NTC to conceal those prohibited payments.

## II. Sentencing Guidelines

### A. Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence.

### B. Agreed Guideline Range

There are no sentencing guideline disputes. Except as provided below, the defendant's guideline range is **12-18 months**, as set forth on the attached worksheets. If the Court finds:

1. that defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than **12–18 months**, the higher guideline range becomes the **agreed range**.

## III. Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

### A. Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed **18 months**.

### B. Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is not more than one year. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

### C. Special Assessment

Defendant will pay a special assessment of $100.00.

### D. Fine

There is no agreement as to fines.

### E. Restitution

The Court shall order restitution to every identifiable victim of defendant's offense.

## IV. Cooperation Agreement

The written cooperation agreement between Defendant **Michael Brown** and the government, which is dated March 29, 2018, is part of this plea agreement. The

government agrees to bring no additional criminal charges against defendant **Michael Brown** arising out of his involvement in the offenses charged in the Fifth Superseding Information, or for additional criminal conduct disclosed under the terms of the cooperation agreement, unless the defendant withdraws his plea or breaches that cooperation agreement.

## V. Use of Withdrawn Guilty Plea

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), **Michael Brown** waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

## VI. Defendant's Right to Withdraw from this Agreement

Defendant **Michael Brown** may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than **18 months**. This is the only reason for which **Michael Brown** may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than **18 months**.

## VII. Appeal Waiver

Defendant **Michael Brown** waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed **18 months**, the defendant also waives any right he may have to appeal his sentence, including the fine and amount of restitution imposed, on any grounds.

Nothing in this waiver bars a timely claim of ineffective assistance of counsel on appeal or by collateral relief under 28 U.S.C. § 2255.

## VIII. Consequences of Withdrawal of Guilty Plea or Vacation of Conviction

If the defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## IX. Parties to Plea Agreement

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## X. Scope of Plea Agreement

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

## XI. Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on Thursday, March 29th, 2018. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

MATTHEW SCHNEIDER
United States Attorney

_____
David A. Gardey
Assistant United States Attorney
Chief, Public Corruption Unit

_____
Bruce C. Judge (w/consent)
Bruce C. Judge
Assistant United States Attorney

_____
Charles J. Kalil II
Assistant United States Attorney

_____
Erin S. Shaw
Assistant United States Attorney

Date: 3/22/18

By signing below, defendant acknowledges that he has read (or has been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.

_____
David Cripps
Attorney for Defendant

_____
Michael Brown
Defendant

Date: 3-29-18

- 13 -